UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| Jean Heffner, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | Docket No. |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Littleton Hospital Association d/b/a | ) | |
| Littleton Regional Hospital | ) | |
| | ) | |
| Defendant. | ) | |

COMPLAINT

Plaintiff Jean Heffner, through counsel, complains against Littleton Hospital Association d/b/a Littleton Regional Hospital as set forth below.

I.  Parties

1. Plaintiff Jean Heffner is a citizen of the Commonwealth of Massachusetts with a home address at 55 Cedar Street, Apartment 2217, Woburn, Massachusetts 01801.

2. Defendant Littleton Hospital Association ("Littleton Hospital") is a New Hampshire non-profit corporation registered to do business in the State of New Hampshire, with a principal place of business at 600 St. Johnsbury Road, Littleton, New Hampshire 03561.

II.  Jurisdiction and Venue

3. This Court has subject matter over this action pursuant to 28 U.S.C. § 1332 as the plaintiff is a citizen of Massachusetts, defendant is a citizen of New Hampshire, and more than $75,000 is in controversy.

1

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to the claims asserted herein occurred in New Hampshire.

### III. Facts

5. Plaintiff Jean Heffner is a highly qualified engineering expert in information systems security and management.

6. In July 2015, defendant Littleton Hospital contacted Ms. Heffner through a recruiting firm, and expressed an interest in considering her for a position as Director of Information Security.

7. Ms. Heffner participated in three interviews with Littleton Hospital that month – two by telephone, and the third in person at the Littleton facility with members of the hospital's senior management team, including Chief Executive Officer Warren West.

8. During the interview in Littleton, Ms. Heffner explained that she was interested in the position, but advised the hospital administrators that she was considering two other job offers - one with State Street Bank and Trust located in Quincy, Massachusetts and one with a real estate investment company located in Waltham, Massachusetts.

9. Within an hour after the interview, Littleton Hospital offered Ms. Heffner the position. A formal offer letter followed that proposed the following terms: (a) an annual salary of $110,000.00; (b) a $5,000.00 sign-on bonus; (c) up to $10,000.00 in relocation expenses; and (d) three months of housing reimbursement.

10. Ms. Heffner accepted the proposal. She signed the offer letter and returned it to Littleton Hospital on August 24, 2015. Her first day on the job was to be September 14.

11. In reliance on the offer by Littleton Hospital and the parties' employment agreement, Ms. Heffner hired a moving company for the transition from Massachusetts and for rental of a storage unit, and began her move to northern New Hampshire.

12. On or about August 27, 2015, Georgene Novak, director of human resources at Littleton Hospital, sent the moving company that Ms. Heffner hired a letter stating that "Littleton Regional Hospital authorizes Wheaton World Wide moving to bill directly for Jean Heffner's interstate move."

13. In reliance on the offer by Littleton Hospital and the parties' employment agreement, Ms. Heffner located housing in North Woodstock, New Hampshire, paying the landlord in advance for the month of September.

14. On September 9, Ms. Heffner travelled to Littleton to report for a pre-employment physical examination. Ms. Heffner was told to wait at the front desk. She brought with her a small, well-trained dog she has had for years as emotional support following an assault she sustained in 2010. The Littleton Hospital employee who conducted the examination asked many probing questions about Ms. Heffner's need for an emotional support animal and about her underlying disability.

15. Ms. Heffner was forced to explain that she suffers from Post-Traumatic Stress Disorder, but tried to make clear that it would not impact her ability to perform the job.

16. The employee proceeded to ask exactly why Ms. Heffner had PTSD, whether she took any medication for her PTSD symptoms, whether she saw a therapist and how frequently, and what exactly triggered her PTSD. The employee also asked for details of the assault, whether Ms. Heffner knew the assailant, and whether the assailant was ever caught. Although she was

embarrassed by the aggressive questioning, Ms. Heffner answered because the employee told her that she was required to answer all questions as part of the pre-employment process.

17. On her first day on the job – September 14 – Ms. Heffner left her new home early to be sure she arrived on time, but because of heavy rain and traffic conditions, she arrived 15 minutes late.

18. After arriving at the hospital, rather than beginning the orientation process, Gail Perkins of the hospital's Occupational Health department stopped Ms. Heffner from reporting for work, telling her to go home.

19. Later that morning, Robert Mach, the Executive Director of Operations at Littleton Regional Hospital, called Ms. Heffner to tell her that Littleton Hospital was rescinding its offer of employment due to "excessive tardiness" and because of her alleged failure to take a drug test. He informed Ms. Heffner that she would no longer receive a sign-on bonus, that Littleton Hospital would not reimburse the movers and storage facility for the costs (in excess of $8,000) associated with moving, and that Ms. Heffner had to leave her apartment by September 30th. Mr. Mach refused to discuss this turn of events with Ms. Heffner, hanging up the telephone.

20. While her furniture, clothing and other belongings remained in storage in northern New Hampshire, and without a job or income, Ms. Heffner moved to Michigan to live with her parents while she searched for new employment.

21. Ms. Heffner was unemployed until she located suitable, alternative employment, beginning her new job on May 16, 2016.

22. Ms. Heffner's furniture, clothing and other belongings were held by the moving company for more than year, until Littleton Hospital paid part of the outstanding balance and Ms. Heffner borrowed money from a friend to pay the remaining amount.

## COUNT I
Breach of Contract

23. The allegations set forth at paragraphs 1 through 23 are reasserted in this Count as if set forth separately herein.

24. Defendant Littleton Hospital made an offer of employment to plaintiff Jean Heffner.

25. Plaintiff Jean Heffner accepted that offer.

26. Defendant Littleton Hospital breached the covenant of good faith and fair dealing implicit in every contract in New Hampshire.

27. Defendant Littleton Hospital breached the employment agreement and the covenant of good faith and fair dealing, resulting in substantial losses to Plaintiff Jean Heffner, including but not limited to back pay damages, front pay damages, and moving expenses.

## COUNT II
Promissory Estoppel

28. The allegations set forth at paragraphs 1 through 28 are reasserted in this Count as if set forth separately herein.

29. Defendant Littleton Hospital made a promise of employment and benefits to plaintiff Jean Heffner.

30. Plaintiff Jean Heffner reasonably relied on that promise, incurring moving expenses and other costs associated with her relocation to North Woodstock, New Hampshire from Waltham, Massachusetts.

31. Promissory estoppel provides an equitable remedy for reliance upon offers subsequently withdrawn. *Great Lakes Aircraft Co. Inc. v. City of Claremont*, 135 N.H. 270, 290 (1992). In this case, injustice can be avoided only through enforcement of the defendant's promise to pay the storage costs involved in Ms. Heffner's move to northern New Hampshire as Ms. Heffner has limited funds and borrowed money to pay the balance of the moving and storage costs in order to retrieve her belongings.

## COUNT III
### Wrongful Termination

32. The allegations set forth at paragraphs 1 through 32 are reasserted in this Count as if set forth separately herein.

33. Although embarrassed by the insistence of Littleton Hospital to learn that Ms. Heffner had been victimized by a sexual assault and compelled to explain why she had been diagnosed with post-traumatic stress disorder, Jean Heffner provided truthful answers to the inappropriate questions directed to her by Littleton Hospital, an act that public policy would encourage.

34. Within a day of providing these truthful answers, defendant Littleton Hospital terminated Ms. Heffner's employment, based on untruthful accusations about Ms. Heffner's performance during the pre-employment physical and her arrival at the Hospital a few minutes late on her first day of employment due to a storm.

35. Littleton Hospital's conduct in this regard was in bad faith.

## COUNT IV
### Violation of New Hampshire anti-discrimination law
### RSA 541-A

36. The allegations set forth at paragraphs 1 through 36 are reasserted in this Count as if set forth separately herein.

37. Plaintiff Jean Heffner suffers from post-traumatic stress, a condition that substantially limits major life activities. EEOC Enforcement Guidance on the Americans with Disabilities Act and Psychiatric Disabilities ("The major life activities limited by mental impairments differ from person to person. There is no exhaustive list of major life activities. For some people, mental impairments restrict major life activities such as learning, thinking, concentrating, interacting with others, caring for oneself, speaking, performing manual tasks, or working. Sleeping is also a major life activity that may be limited by mental impairments.").

38. Unless job-related and consistent with business necessity, employers are not allowed to make inquiries of an employee about whether an individual has a disability or to ask about the nature or severity of the disability. 42 U.S.C. § 12112(d)(4)(A).

39. Defendant Littleton Hospital violated New Hampshire anti-discrimination law by improperly and unlawfully demanding that Jean Heffner disclose details of the PTSD she suffers and the traumatic events giving rise to the condition without any proper basis to believe that the condition would impact her ability to perform the job at Littleton Hospital.

40. To the extent Ms. Heffner's medical condition is found not to fall within the strict confines of the definitions of impairments protected by New Hampshire anti-discrimination law, Ms. Heffner believes and avers that the unlawful conduct of Littleton Hospital described hereinabove resulted from the perception by Littleton Hospital that Ms. Heffner suffered from a disability, conduct made unlawful by RSA 541-A and its federal counterpart, as detailed in Count V below.

# COUNT V
Violation of the Americans with Disabilities Act
42 U.S.C. § 12112 *et seq.*

41. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms clinician continued to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

42. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §12101(b)(1)-(2).

43. Title I of the ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112.

44. Generally, a covered entity is an employer with "15 or more employees for each working Day in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 12111(5).

45. Littleton Hospital is a covered entity under Title I of the ADA.

46. Plaintiff's post-traumatic stress disorder substantially limits major life activities. Therefore, Plaintiff is a qualified individual with a disability under Title I of the Americans with Disabilities Act and is entitled to the protections of the Americans with Disabilities Act under 42 USC § 12112, et seq.

47. "A covered entity shall not require a medical examination and shall not make inquiries of

an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A).

48. The defendant asked the plaintiff whether she had a disability, and about the nature and severity of her disability. The plaintiff's disability was not job-related.

49. To the extent Ms. Heffner's medical condition is found not to fall within the strict confines of the definitions of impairments protected by federal anti-discrimination law, Ms. Heffner believes and avers that the unlawful conduct of Littleton Hospital described hereinabove resulted from the perception by Littleton Hospital that Ms. Heffner suffered from a disability, conduct made unlawful by 42 U.S.C. § 12112 *et seq*.

50. The defendant, as described above, violated the ADA, thereby entitling plaintiff to all remedies available under federal law, including compensatory damages, punitive damages, costs and attorney's fees.

WHEREFORE, the plaintiff Jean Heffner respectfully requests this Honorable Court will:

A. Schedule a jury trial;

B. Enter judgment in favor of Jean Heffner for all damages allowed by law, including but not limited to the following:

   i. Lost wages and benefits, both back pay and front pay;

   ii. Lost bonus;

   iii. Relocation costs;

   iv. Lost housing stipend;

   v. Compensatory damages;

   vi. Enhanced compensatory damages for the wanton, malicious and/or oppressive conduct of the defendant as described herein above;

   vii. Punitive damages;

   viii. Reasonable costs and attorney's fees; and

   ix. All such other damages in the maximum amount allowed by the Constitution and laws of the United States and New Hampshire.

C. Grant such other and further relief as is justice requires.

Respectfully submitted,

Jean Heffner

By Her attorneys,

NIXON, VOGELMAN, BARRY,
SLAWSKY & SIMONEAU, P.A.

October 27, 2016                By:     /s/  David P. Slawsky
                                        _____
                                        David P. Slawsky (NH Bar #6591)
                                        Cristin R. Hepp (NH Bar #266470)
                                        77 Central Street
                                        Manchester, NH 03101
                                        (603) 669-7070
                                        *dslawsky@davenixonlaw.com*
                                        *chepp@davenixonlaw.com*